## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN M. GODINA, JR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:07-cv-497(VLB) |
| RESINALL INTERNATIONAL, INC. ET AL., | : | |
| Defendants. | : | December 17, 2009 |

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #150]

The Plaintiff, John M. Godina, Jr. ("Plaintiff"), brings this action for compensatory and punitive damages against his former employer Resinall Corp. and affiliated companies Resinall International, Inc., Resinall Mississippi, Inc., and Resinall, Inc. (collectively, the "Defendants"),[1] claiming violations of fiduciary responsibility sections of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("E.R.I.S.A."), specifically §§ 1103(a), 1103(c), 1104(a), 1106(b)(1), 1106(b)(2), and 1109.[2] The Defendants have asserted four counterclaims against the Plaintiff for breach of fiduciary duty, unjust enrichment, money had and received, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq. Presently pending before the Court is the Defendants'

---

[1] By Order dated December 1, 2009, the Court dismissed all claims against Resinall International, Inc., Resinall Mississippi, Inc., and Resinall, Inc. Accordingly, although these entities are parties to the instant motion for summary judgment, they have been terminated as Defendants to this lawsuit. The Court also dismissed all claims against Resinall Corp.'s Deferred Compensation Plan and Lee Godina for lack of personal jurisdiction because they were not properly served with process. See Doc. #157.

[2] Per the Court's December 1, 2009 Order, all remaining claims asserted in the Second Amended Complaint have been dismissed.

motion for summary judgment on all of the Plaintiff's remaining E.R.I.S.A. claims as well as the Defendants' counterclaims for breach of fiduciary duty and unjust enrichment.  See Doc. #150.  For the reasons set forth below, the Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.  Factual and Procedural Background

On February 27, 2007, the Plaintiff filed a six-count complaint in Connecticut Superior Court against Defendant Resinall Corp. and affiliated companies Resinall International, Inc., Resinall Mississippi, Inc., and Resinall, Inc., alleging non-payment of retirement benefits due under a deferred executive compensation plan along with related claims.  On March 30, 2007, the Defendants removed the case to this Court.  On November 28, 2007, this Court dismissed the Plaintiff's claims for negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act.  See Doc. #34.  The Defendants subsequently filed a motion for judgment on the pleadings as to the remaining three counts, alleging that these claims were preempted by E.R.I.S.A..  The Plaintiff objected and attached a Proposed Amended Complaint to his memorandum in opposition in an attempt to cure the defects in his original Complaint.  On July 22, 2009, the Court denied the Defendants' motion but ordered the Plaintiff to revise his Proposed Amended Complaint to specifically state the sections of E.R.I.S.A. upon which he relied.  See Doc. #122.

The Plaintiff filed an Amended Complaint on July 24, 2009, but that Complaint cited the entirety of E.R.I.S.A. and failed to plead which specific sections of E.R.I.S.A. were violated by the conduct alleged.  Accordingly, on September 4, 2009,

2

the Court granted the Plaintiff one additional opportunity to amend the Complaint to properly specify the legal basis for his claims as the Court had previously ordered. See Doc. #133.  On September 14, 2009, the Plaintiff filed a Second Amended Complaint alleging three counts and identifying the specific E.R.I.S.A. provisions that he claims were violated by each of the Defendants.  On October 5, 2009, the Defendants moved to dismiss the Second Amended Complaint.  By Order dated December 1, 2009, the Court granted in part and denied in part the motion to dismiss.  See Doc. #157.  The Court dismissed Counts Two and Three of the Second Amended Complaint in their entirety, and dismissed the remaining claims against all defendants other than Resinall Corp.  The Court permitted Count One to go forward insofar as it asserts fiduciary misconduct claims against Resinall Corp.  The Defendant filed the present motion for summary judgment on November 2, 2009, and the Plaintiff filed his opposition thereto on November 23, 2009.  See Doc. ##150, 154.

The following facts relevant to the Defendants' motion for summary judgment are undisputed unless otherwise noted.

The Plaintiff, a Florida resident, was formerly the President of Resinall Corp., the parent corporation of Resinall International, Inc. and Resinall Mississippi, Inc. Resinall International, Inc. has it's principal place of business in Connecticut, and the remaining defendants transact business in Connecticut.  Although named as a Defendant in this lawsuit, Resinall, Inc. is not a registered corporation in any jurisdiction.  The Resinall Defendants are family owned and have common boards of directors and officers.  The Plaintiff asserts that, since its founding, Resinall

3

Corp. has controlled all the other Defendants and made all decisions concerning their deferred compensation plans.  <u>See</u> Godina Aff., ¶ 15.  The Resinall Defendants were formerly a division of Ziegler Chemical and Mineral Corporation ("Ziegler"), which was previously known as Carolina Processing Corporation ("Carolina").

The Plaintiff first began working for Carolina in 1966 as a sales representative, eventually rising to the position of Vice President of sales.  In 1981, the Plaintiff helped to found Resinall Corp. and became one of the five original shareholders of the company, the others being John M. Godina, Sr., Elaine Godina, Lee Godina, and Janet Godina Fairchild.  He continued in his position as Vice President of Sales and Marketing for Resinall Corp. until 1997, at which time he was elevated to the position of President.  The Plaintiff served as President of Resinall Corp. from 1997 to 2000, during which time he received a salary of $300,000 per year.  From 1981 to 2000, the number of employees working for company grew from approximately 50 to approximately 300.

The parties offer conflicting versions of the circumstances surrounding the creation of the executive compensation plan at issue.  The Plaintiff claims that, over the course of his 35 years of employment with the Defendants and their predecessors, he as well as other employees assumed responsibilities and performed extra work that was not immediately compensated.  Given that the Plaintiff and other key employees were not fully compensated for their efforts, beginning in 1994, the Plaintiff, along with John M. Godina, Sr., Lee Godina, Roger Burke, and William Zaccarelli, began planning for the creation of a deferred compensation plan or other benefit plan (the "Plan") to retain and reward key

4

employees for their past efforts.  An initial draft was prepared by Attorney Arthur Kroll in August 1999, and was presented by Lee Godina, Executive Vice President and Secretary of Resinall Corp.  During that same month, the Board of Directors of Resinall Corp. established a Pension Committee of the Board of Directors, consisting of the Plaintiff and Lee Godina.  Between August 1999 and November 1999, the Plan was amended as a result of the Plaintiff's concern that his and other beneficiaries' heirs would not receive deferred compensation in the event of their death.  Accordingly, the Plaintiff had Attorney Kevin O'Grady review the Plan and recommend the inclusion of a provision for the heirs of the beneficiaries.

The Plaintiff further claims that, on or about November 20, 1999, Arthur Kroll, at Lee Godina's request, drafted the final version of the Plan.  The Plaintiff, Lee Godina, and William Zaccarelli, acting as Chief Financial Officer for Resinall Corp., each reviewed the Plan and deemed it appropriate.  On November 23, 1999, the Plaintiff met with Lee Godina and William Zaccarelli, and they reviewed the Plan a final time, then signed the Plan and had it notarized.  The final version of the Plan was a six page document captioned, "Deferred Compensation Plan of Resinall International, Inc."  The fiduciaries of the Plan at the time of its creation were the Plaintiff, Lee Godina, and William Zaccarelli.

The Defendants, on the other hand, set forth the following sequence of events.  During the 1990's, the Defendants' Board of Directors began considering mechanisms for ensuring the continued loyalty of their employees.  Among the vehicles considered was a deferred compensation plan for the benefit of five key employees.  Over the course of the next several years, meetings were held to

5

discuss various options.  In late 1998, life insurance policies were taken out on the lives of the five key employees, not including the Plaintiff and Lee Godina, that the Defendants hoped to induce to continue to work for them.  The insurance policies named Resinall Corp. as the beneficiary.  This was a mechanism designed so that the company would recoup some of the money paid out of the general assets in benefits owed under whatever plan was ultimately adopted.  Subsequently, on or about October 7, 1999, Resinall Corp. also purchased life insurance policies on the lives of the Plaintiff and Lee Godina, naming Resinall Corp. as the beneficiary.

The Defendants further assert that, in or around October 1999, a draft proposal for a deferred compensation plan was floated and the Plaintiff took the draft to his attorney, Kevin O'Grady, in order to make it legally enforceable.  The Plaintiff then presented it to Lee Godina for his signature on November 23, 1999.  Lee presumed that the Plaintiff would obtain the approval of John M. Godina, Sr., as it was the normal course of affairs to secure his approval of major initiatives, and signed off as instructed by his brother.  The Plan was then executed by the Plaintiff, Lee Godina, and William Zaccarelli.  The Preamble to the Plan stated that it was "an unfunded deferred compensation arrangement for a select group of management to highly-compensated employees . . ."  Def. Ex. C, ¶ 1.

The parties also contest the validity of the Plan.  The Defendants claim that the Plan was never presented for approval to or approved by the Board of Directors or shareholders of the Defendants.  The Defendants further claim that, throughout the time period at issue, the income and benefits of the shareholders of the Defendants were determined by their Board of Directors and the income and

benefits of other employees were determined by groups of officers directly familiar with their contributions to the Defendants.  The Defendants also indicate that the Plaintiff did not inform his parents, John M. Godina, Sr. and Elaine L. Godina, of his execution of the Plan or his claim for deferred compensation against the corporations they largely owned until 2006.  The Plaintiff, on the other hand, asserts that, on the date of the Plan's execution, he and Lee Godina had been granted the authority by the shareholders, Board of Directors, and through the by-laws of the Defendants and their positions as President and Vice President and Secretary to adopt the Plan.  Thus, the Plaintiff claims, the Plan became a legally binding contract between the Defendants and beneficiaries to provide beneficiaries with deferred compensation as set forth in Schedule A of the Plan.  See Def. Ex. C.

There were seven beneficiaries of the Plan - the Plaintiff, Lee Godina, William Zaccarelli, John Johnson, Kenneth Parker, Matthew Weston, and Kenneth Cooley. Of these seven beneficiaries, only the Plaintiff and Lee Godina were shareholders and officers and/or directors of the Defendants.  Pursuant to the Plan, the Plaintiff was to receive $300,000 per year for 15 years upon retirement at age 65 or $200,000 commencing on his sixtieth birthday should he choose to retire sooner.  The company's obligation to pay the Plaintiff benefits prior to age 65 was conditional upon such payments "not adversely impacting the financial solvency of the Company."  Def. Ex. C, Schedule A.[3]  However, "the obligation of the Company at

---

[3]  This particular provision applied only to the Plaintiff and Lee Godina, and not to any of the other five beneficiaries.  The Plan provides no indication that any portion of the benefits awarded to the other five beneficiaries were contingent upon the financial solvency of the company.

age 65 is absolute and shall be guaranteed by Resinall Corp., and Resinall

Mississippi and any of its subsidiaries or future subsidiaries."  Id.

Shortly after executing the Plan, the Plaintiff announced his imminent

retirement.  The Plaintiff indicates that he decided to leave his employment with the

Defendants due to business and personal differences between himself and John M.

Godina, Sr.  The Plaintiff retired in January 2000.  Since that time, he has turned

down offers of employment in competing businesses.  According to the Defendants,

the original and executed Plan "disappeared" when the Plaintiff retired and was

held in the Plaintiff's possession until he produced it during this lawsuit.  Def. Local

R. 56(a)(1) Statement, ¶¶ 47-48.  The Defendants claim that Lee Godina began to

question the legitimacy of the Plan after the Plaintiff retired.  Therefore, he asked his

father, John M. Godina, Sr., whether he had knowledge of the Plan, which John M.

Godina, Sr. denied.  Ultimately, in 2003, Lee Godina cancelled the insurance policy

on the Plaintiff that Resinall Corp. had purchased on October 7, 1999 to offset the

Plan's costs, and "reclaimed that lost money for the corporation."  Def. Mem. at 9.

In 2002, Resinall Corp. adopted a "Supplemental Executive Retirement Plan"

(the "New Plan").[4]  On November 15, 2002, notices of the New Plan were sent to key

employees William Zaccarelli, John Johnson, Kenneth Parker, Matthew Weston,

Kenneth Cooley and Joe LeVine.  The New Plan guaranteed the same level of

---

[4]  Although called a "Supplemental" plan, the New Plan was sponsored by
Resinall Corp. rather than Resinall International, Inc., the sponsor of the original
Plan.  The New Plan has not been provided to the Court, and therefore it is unclear
what the New Plan was intended to supplement by its terms.

benefits as those guaranteed in the original Plan for each of the key employees with the exception of the Plaintiff and Lee Godina, who were not beneficiaries of the New Plan.  The Defendants claim that the New Plan was enacted because the five non-shareholder beneficiaries of the original Plan had been informed of its creation and the company had to enact the New Plan in order to avoid conflict and prevent the loss of these critical employees.

On August 22, 2006, the Plaintiff reached age 60, and the Plaintiff's initial deferred compensation payment of $200,000 came due pursuant to the Plan. Shortly after that date, the Plaintiff met with John M. Godina, Sr., Lee Godina and other key employees of the Defendants and orally requested payment.  He was told at that time that he would not be receiving any payment pursuant to the Plan. Subsequently, on November 3, 2006, the Plaintiff sent a letter to John M. Godina, Sr. formally requesting the first payment due under the Plan.  To date, no payment has been made to the Plaintiff.

The Defendants admit that the Plaintiff has not been paid deferred compensation pursuant to the Plan.  However, they assert that he was gifted a one third share of Resinall International, Inc., and that he has received in excess of $1.5 million from the Defendants since his retirement.  The Plaintiff denies receiving $1.5 million as a shareholder from the Defendants.  The Defendants also assert that the Plaintiff has received insurance premiums from the Defendants since his retirement that he was not entitled to receive.

9

## II.  Discussion

### A.  Legal Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely

asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

B. Plaintiff's E.R.I.S.A. Claims

The Plaintiff alleges fiduciary misconduct claims against Resinall Corp. pursuant to the following sections of E.R.I.S.A.:  29 U.S.C. §§ 1103(a), 1103(c), 1104(a), 1106(b)(1), 1106(b)(2), and 1109.  See Second Amended Complaint, ¶¶ 33-40.

The Defendants first argue that summary judgement should be granted in their favor as to the Plaintiff's E.R.I.S.A. claims because the Plan was not properly adopted, and that, even if it was properly adopted, it is void because it is unfair to the Defendants.

The first issue that the Court must address in determining whether the Plan

was properly adopted is what substantive law of corporations applies in this case. Both the District of Connecticut and Connecticut courts apply the "internal affairs doctrine" to disputes among or between a corporation and its directors, officers and shareholders.  See Resolution Trust Corp. v. Camhi, 861 F. Supp. 1121, 1126-27 (D. Conn. 1994); Ellis v. Emhart Mfg. Co., 150 Conn. 501, 508 (1963).  Pursuant to this doctrine, "the law of the state of incorporation determines issues relating to a corporation's internal affairs, providing certainty and predictability while generally protecting the justified expectations of parties with interests in the corporation." Resolution Trust, 861 F. Supp. at 1126.  Here, Resinall International, Inc., the purported sponsor of the Plan, is a Delaware corporation, and therefore Delaware's substantive law of corporations applies to questions of corporate governance, including the approval and fairness of the Plan.

The Defendants argue that the Plan was not properly enacted because it creates a form of executive compensation, and therefore must be approved by Resinall International, Inc.'s Board of Directors.  However, Delaware law clearly empowers a board of directors to appoint committees and delegate to them a broad range of responsibilities.  See 8 Del. Code Ann. § 141(c)(2) ("The board of directors may designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation . . .  Any such committee . . . shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it . . ."); see also

Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 127 (3rd Cir. 1998) (applying Delaware law) ("[U]nless otherwise provided by the certificate of corporation and subject to the limitations set forth in 8 Del. Code Ann. § 141(c), the board may freely delegate the authority to manage the business and affairs of the corporation. Indeed, the ability to delegate is the essence of corporate management, as the law does not expect the board to fully immerse itself in the daily complexities of corporate operation.") (internal citations omitted). The responsibilities which may be delegated include setting executive compensation and administering and amending an E.R.I.S.A. plan. See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 54 (Del. 2006) ("The Delaware General Corporation Law (DGCL) expressly empowers a board of directors to appoint committees and to delegate to them a broad range of responsibilities, which may include setting executive compensation. Nothing in the DGCL mandates that the entire board must make those decisions."); Schoonejongen, 143 F.3d at 127 (holding that board of directors properly delegated authority to administer and amend E.R.I.S.A. plan).

Here, the record suggests that the Defendants' Board of Directors began considering a deferred compensation plan in the 1990's. The record further suggests that, in August 1999, the Defendants created a Pension Committee for the purpose of administering the Plan. The members of the Pension Committee were the Plaintiff and Lee Godina. The Plan was ultimately executed several months later, on November 23, 1999. It is unclear from the record what precise responsibilities were delegated to the Pension Committee prior to the Plan's

execution on November 23, 1999.  Therefore, there is a question of material fact as to whether the Board of Directors delegated to the Pension Committee the authority to execute and bind the corporation to the Plan.

Furthermore, "[b]eyond the board of directors, the corporation may validly act through its directors and officers as authorized corporate agents.  In general, an officer's powers stem from the organic law of the corporation, or a board delegation of authority which may be express or implied.  Express authority to act on behalf of the corporation is usually manifested through a statute, the certificate of incorporation, the by-laws, or a board or shareholder action.  Implied actual authority, which is express authority circumstantially provided, may be found through evidence as to the manner in which the business has operated in the past, the facts attending the transaction in question, circumstantial evidence of board declarations surrounding the given transaction, or the habitual use or course of dealing common to the company.  Similarly, authority will be implied when it is reasonably necessary and proper to effectuate the purpose of the office or the main authority conferred."  Schoonejongen, 143 F.3d at 127-28 (internal citations omitted).

In this case, the by-laws of Resinall International, Inc. give the President of the corporation "the general powers and duties of supervision and management usually vested in the office of President of a corporation[,]" and provide that the President "shall have general supervision, direction and control of the business of the corporation."  Def. Ex. I, Art. IV, Sec. 4.  "Delaware courts have held that

14

attendant to this unqualified grant of authority, the president as general manager commands the power to 'do anything the corporation could do in the general scope and operation of its business.'"  <u>Schoonejongen</u>, 143 F.3d at 128.  The Defendants cite no evidence to suggest that the corporation lacked the ability to create an E.R.I.S.A. plan, and in fact, the record reflects that the corporation subsequently adopted the New Plan in November 2002.  Therefore, it appears that the Plaintiff, as President of the Defendants, possessed express authority to create the Plan.  <u>See</u> <u>id.</u> ("It certainly follows that the broad power to fix employee compensation subsumes the authority to amend a specific type of compensation - retirement health benefits governed by ERISA - and logic would consequently dictate that the board expressly approved the CEO's authority to create, administer, or amend CW's retirement plan.").

The Defendants claim that, notwithstanding the general grant of authority to the Plaintiff as President, income and benefits were decided by the Board of Directors.  However, the meeting minutes available in the record contain no evidence to substantiate this claim.  Accordingly, there is a genuine issue of material fact regarding whether the Plaintiff had express authority to create the Plan.

In addition, the Plaintiff has submitted sufficient evidence from which the trier of fact could determine that, even if he lacked express authority, he possessed implied actual authority to adopt the Plan.  The Plaintiff's expert, Walter C. King, reviewed the Board of Directors and shareholder meeting minutes and determined

that officer compensation and employee compensation plans were not systematically approved by the Board of Directors prior to July 27, 2000.  See Pl. Ex. 12 at 4.  The Plaintiff has also submitted a waiver signed by the Board of Directors of Resinall International, Inc. authorizing the Plaintiff as President and Lee Godina and William Zaccarelli as Vice President to take all actions and execute documents necessary to modify the terms of a loan agreement on behalf of the corporation, which tends to show that these executives had the authority to enter into contracts on behalf of the company.  See Pl. Ex. 8.  Finally, the Defendants concede that the Board of Directors began considering a deferred compensation plan during the 1990's, that they held meetings for the purpose of discussing various options in that regard, and that they took out life insurance policies on the individuals who ultimately were designated as Plan beneficiaries in 1998 as a means of allowing the Defendants to recoup some of the money that was to be paid out in retirement benefits.  Based upon this evidence, a reasonable trier of fact could conclude that both the Plaintiff and Lee Godina, as President and Vice President, had implied authority to create the Plan and bind Resinall International, Inc. to it's terms.

The Defendants also argue that, even if the Plan was properly adopted, it is void because the Plaintiff cannot demonstrate the fairness of the Plan as required in the event of a transaction between the corporation and a director or officer.  See Gottlieb v. Heyden Chemical Corp., 91 A.2d 57, 58 (Del. Ch. Ct. 1952).  The Delaware Code provides that a contract or transaction between a corporation and one or more of its directors or officers is valid if:  1) "The material facts as to the director's

16

or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or the committee, and the board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or" 2) "the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or" 3) "The contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified, by the board of directors, a committee or the shareholders."  8 Del. Code Ann. § 144(a).

Here, there is insufficient evidence from which the Court could conclude that either a majority of disinterested directors or the shareholders approved the Plan. Furthermore, as stated above, there is a genuine question of material fact as to whether the Board of Directors delegated the authority to create and execute the Plan to the Pension Committee; however, both members of the Committee were interested because they are Plan beneficiaries.  Therefore, the Court must consider the third option under 8 Del. Code Ann. § 144(a), whether the Plan was fair to the Defendants.

The Defendants' second challenge, that the Plan is unfair, requires the Court to apply the "entire fairness" standard adopted by the Delaware Supreme Court when examining interested officer and director transactions.  See Cinerama, Inc. v.

Technicolor, Inc., 663 A.2d 1156, 1162 (Del. 1995).  The entire fairness standard

requires the interested officer or director to establish "to the court's satisfaction

that the transaction was the product of both fair dealing *and* fair price."  Id. at 1163.

A "fair dealing" inquiry examines how the transaction was timed, initiated,

structured, negotiated and disclosed, while a "fair price" inquiry examines all

relevant economic and financial factors.  See id. at 1162-63 (quoting Weinberger v.

UOP, Inc., 457 A.2d  710, 711 (Del. 1983)).  As the Delaware Supreme Court has

explained, "[a] finding of perfection is not a *sine qua non* in an entire fairness

analysis . . .  The standard of entire fairness is also not in the nature of a litmus test

that 'lend[s] itself to bright line precision or rigid doctrine. . .  [However], entire

fairness cannot be ascertained by an unstructured or visceral process.  Rather, it is

a standard by which the [court] must carefully analyze the factual circumstances,

apply a disciplined balancing test to its findings, and articulate the bases upon

which it decides the ultimate question of entire fairness."  Id. at 1179 (internal

citations omitted).

The Defendants insist that the Plan was not fair to the Defendants because it

was initiated by the Plaintiff when he already planned to retire, was structured in

such a way that he would receive a total of $4.5 million in benefits without

constructive review by anyone else, and was not negotiated or disclosed to the

Board of Directors for approval.  Clearly, what the Plaintiff intended is a question of

fact.  Further, the Defendants completely ignore their own concession that the

Board of Directors had been contemplating the creation of a deferred compensation

plan throughout the 1990's, and that Lee Godina and William Zaccarelli also reviewed and signed the Plan.  In addition, the Plaintiff has presented a conflicting version of the facts whereby the Plan was drafted primarily at the direction of Lee Godina rather than himself.  Finally, the Defendants present no evidence that the amount of benefits awarded by the Plan are unfair in any way, and in fact, the Defendants subsequently enacted the New Plan awarding the same benefits to all beneficiaries of the original Plan with the exception of the Plaintiff and Lee Godina, who are not beneficiaries of the New Plan.  In light of the numerous factual disputes regarding the Plan's creation, and given the Cinerama Court's instruction that entire fairness must be decided based upon a careful analysis of the factual circumstances and upon application of a disciplined balancing test, it is clear that the issue of entire fairness is best left to the trier of fact in this case.

Lastly, the Defendants argue that summary judgement should be granted in their favor because the Plan was a "top hat" plan and is therefore exempt from E.R.I.S.A.'s fiduciary requirements.  Count One of the Second Amended Complaint alleges that the Defendants breached their fiduciary duties by failing to pay the Plaintiff benefits to which he was entitled under the Plan.  E.R.I.S.A. exempts so-called "top hat" plans from it's fiduciary responsibility provisions.  See 29 U.S.C. § 1101(a)(1).[5]  A top hat plan is defined as "a plan which is unfunded and is

---

[5]  **Section 1101(a)(1) provides as follows:  "This part shall apply to any employee benefit plan described in section 1003(a) of this title . . . , other than (1) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees . . ."**

maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 287 (2d Cir. 2000).  Thus, in order to decide whether the Plan was a top hat plan, the Court must determine whether it was "(1) unfunded, and (2) maintained primarily for a select group of management or highly compensated employees." Id.

With respect to the first factor, whether or not the Plan was funded, the Preamble to the Plan describes it as "an unfunded deferred compensation arrangement for a select group of management to highly-compensated employees . . ." Def. Ex. C, ¶ 1.  Nevertheless, the Plaintiff argues that the Plan was in fact funded because Resinall Corp. purchased life insurance policies on the lives of the Plan beneficiaries which inured to the company.

E.R.I.S.A. does not define what makes a plan "funded" for the purpose of determining whether the plan qualifies as a top hat plan.  In general, a plan is unfunded where the "benefits thereunder will be paid . . . solely from the general assets of the employer." Demery, 216 F.3d at 287; see also Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1214 (8th Cir. 1981) ("[f]unding implies the existence of a res separate from the ordinary assets of the corporation").  The Southern District of New York has formulated the appropriate inquiry that a court must ask in determining whether a plan is unfunded as follows:  "[C]an the beneficiary establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the

terms of the plan, obligated to pay the deferred compensation?"  Miller v. Heller, 915 F. Supp. 651, 660 (S.D.N.Y. 1996).  This formulation has been expressly approved by the Second Circuit.  See Demery, 216 F.3d at 287.

In Miller, the deferred compensation plan at issue expressly stated that no asset of the corporation secured the corporation's obligations under the plan, and that the rights of plan beneficiaries were those of unsecured, general creditors of the corporation.  915 F. Supp. at 660.  The Southern District of New York held that "when the language of the plan expressly avoids making a direct tie between the insurance policy and the deferred compensation plan, it must enforce the terms of the plan regardless of the fact that the purpose of the insurance policy was to fund the plan."  Id. at 660.  Thus, the Southern District of New York found that the corporation's deferred compensation plan was unfunded even though the plaintiffs owned the insurance policies at issue and the corporation had purchased the insurance policies for the purpose of financing any liabilities arising from the plan.  Id. at 661; see also Belsky v.First Nat'l Life Ins. Co., 818 F.2d 661, 663 (8th Cir. 1987) (holding plan to be unfunded where its administrator purchased life insurance policies that inured to the corporation as a means of reimbursing the corporation for the liability created by the plan because the plan failed to make a direct tie between the insurance policy and the plan such that the cash value of the policy became a "general, unpledged, unrestricted asset" of the corporation).

In this case, the relevant provision of the Plan states as follows:

Nothing contained herein shall be deemed to create a trust of any kind or create any fiduciary relationship.  The company has purchased

> **Flexible Premium Variable Life Insurance Policies or other insurance policies to aid it in meeting its obligation hereunder.  The policies shall continue for all purposes to be a part of the general funds of the Company and no person other than the Company shall, by virtue of the provisions of this Plan, have any interest in such policies.  To the extent that any person acquires a right to receive payments from the Company under this Plan, such right shall be no greater than the right of any unsecured general creditor of the Company.**

Def. Ex. C, ¶ 4.05.  Thus, as in <u>Miller</u> and <u>Belsky</u>, the Plan unambiguously provides that the insurance policies are a part of the general assets of the company and that beneficiaries have no rights under the Plan greater than the right of any unsecured general creditor of the Company.  The Plaintiff points to no evidence other than the existence of the life insurance policies inuring to the corporation to establish that the Plan was funded.  Accordingly, the Court holds that the Plan is unfunded as a matter of law.

With respect to the second issue, the Second Circuit has identified certain factors to be considered in determining whether a plan was maintained primarily for a select group, including the percentage of employees invited to join the plan, the nature of their employment, and their negotiating power.  <u>Demery</u>, 216 F.3d at 288-90.  The Preamble to the Plan expressly states that it is "for a select group of management to highly-compensated employees . . ."  Def. Ex. C, ¶ 1.  The Plan names seven beneficiaries, while Resinall Corp. employed approximately 300 people at the time the Plan was executed.  Thus, only approximately 2.3% of employees were invited to join the Plan.  Of these seven individuals, three were top executives - the Plaintiff was President, Lee Godina was Vice President, and William Zaccarelli was Chief Financial Officer.  In addition, these three individuals were

largely responsible for creating the Plan and thus clearly possessed negotiating power with respect to the Plan.  The record does not contain the job titles and job responsibilities of the remaining four beneficiaries.  However, the Plaintiff has offered no evidence to suggest that these four beneficiaries lacked bargaining power so as to raise a question of material fact on this issue.  See Id. at 290 (upholding summary judgment on basis that plan was a top hat plan where it was offered to 15.34% of employees whose average salary was more than double that of all employees and plaintiff offered no evidence to suggest an absence of bargaining power).

Moreover, the Plaintiff admits that the Plan was in fact intended for a select group of management or highly compensated employees.  In his affidavit in support of his opposition to the Defendants' motion for summary judgment, the Plaintiff repeatedly states that the purpose of the Plan was to compensate "key employees" for their past efforts.  See, e.g., Pl. Ex. 15, ¶ 18 ("During the course of my employment with the Defendants I and other *key employees* of Resinall Corp. assumed responsibilities with the Defendant for which we were not immediately compensated and it was always anticipated among the founders, corporate officers, owners and *key employees* of the Defendants that I and the other *key employees* were deferring part of the compensation we were due for their efforts in founding and building the Defendant entities and making the entities profitable.") (emphasis added); Pl. Ex. 15, ¶ 19 ("Over the course of my 35 years of employment with the Defendant and their predecessor I and the other *key employees* went over and

above what was required of us as salaried employees to build the businesses and make them profitable.  During the course of our employment I and the other *key employees* were not compensated for their extra efforts.") (emphasis added); Pl. Ex. 15, ¶ 20 (Given that I and the other *key employees* were not fully compensated for our efforts, beginning in 1994, I, John Godina, Sr., Lee Godina, Roger Burke, Technical Vice President and Bill Zaccarelli, Vice President of Finance began planning for the creation of a deferred compensation plan or other benefit plan to award *key employees* for past efforts and to retain *key employees*.") (emphasis added).  The Plaintiff also uses the term "key employees" throughout his Local Rule 56(a)(2) statement of material facts and his memorandum in opposition to the Defendants' motion for summary judgment.

Accordingly, the Court holds that the Plan is a top hat plan and is thus expressly exempted from E.R.I.S.A.'s fiduciary responsibility provisions.  Therefore, the Plaintiff's sole remaining E.R.I.S.A. claims, enumerated in Count One of the Second Amended Complaint, fail as a matter of law and Resinall Corp. is entitled to summary judgment in its favor on these claims.

## C.  Defendants' Counterclaims

The Defendants also move for summary judgment on their counterclaims for breach of fiduciary duty and unjust enrichment.

"The essential elements [of] a cause of action for breach of fiduciary duty under Connecticut law are:  1. That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation

on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; 2. That the defendant advanced his or her own interests to the detriment of the plaintiff; 3. That the plaintiff sustained damages; 4. That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." Ives Bros., Inc. v. Keeney, No. WWMCV064004952S, 2000 WL 35775696, at *5 (Conn. Super. Ct. Oct. 27, 2009).  Here, the Defendants base their breach of fiduciary claim on the theory that the Plaintiff engaged in a self-dealing transaction to enact the Plan that was unfair to the corporation, and that as a result of his attempted enactment of the Plan, the Defendants were compelled to extend similar benefits to their key employees through the "Supplemental Executive Retirement Plan." However, the Court has already found that there are genuine issues of material fact regarding whether the Plan was validly adopted and whether it was fair to the Defendants.  Accordingly, the Court denies summary judgment on this claim. Furthermore, the Court notes that it is skeptical of the Defendants' ability to establish this claim at trial, given the fact that the Board of Directors clearly contemplated the creation of an executive compensation plan, it appears that the Plaintiff had both express and implied authority to adopt the Plan, and a portion of the benefits that the Plaintiff was awarded under the Plan - namely, benefits from age 60 to age 65 - were contingent on the financial solvency of Resinall International, Inc.

In order to succeed on a claim for unjust enrichment under Connecticut law,

a party must show "(1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  <u>Vertex, Inc. v. Waterbury</u>, 278 Conn. 557, 573 (2006).  The Defendants argue that they are entitled to summary judgment on their unjust enrichment claim because they have paid several thousand dollars in insurance premiums and other benefits to the Plaintiff since he retired from his employment with the Defendants.  The only evidence they cite in support of this argument is the Plaintiff's deposition transcript.  <u>See</u> Pl. Dep. Tr. 235-37.  However, the Plaintiff's responses to questions regarding insurance premiums are inconclusive and fail to establish that the Plaintiff received a benefit to which he was not entitled and for which he unjustly refused to pay.  For instance, the Defendants' counsel asked the Plaintiff, "Is Resinall obligated to pay your health insurance coverage?," and the Plaintiff responded, "I don't know."  Pl. Dep. at 235-237.  Accordingly, there are questions of material fact regarding the Defendants' unjust enrichment claim.

Finally, the Court holds that Resinall, Inc. must be terminated from this case. The Plaintiff and the Defendants agree that Resinall, Inc. is not a registered corporation in any jurisdiction and does not exist.  <u>See</u> Def. Local Rule 56(a)(1) Statement, ¶ 32.  The Plaintiff further suggests that the inclusion of the name Resinall, Inc. on a number of documents produced by the Defendants may have been a typographical error.  Pl. Aff., ¶ 6.

### III.  Conclusion

Based on the above reasoning, the Defendants' motion for summary judgment [Doc. #150] is GRANTED IN PART and DENIED IN PART.  The Plaintiff's remaining E.R.I.S.A. claims, enumerated in Count One of the Second Amended Complaint, are dismissed.  In addition, Resinall, Inc. is terminated from this case. This case will proceed to trial on the remaining legal claims, to wit:  Resinall Corp.'s, Resinall International, Inc.'s, and Resinall Mississippi, Inc.'s counterclaims for breach of fiduciary duty, unjust enrichment, money had and received, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.*

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  December 17, 2009.

27